(No. 4067—

EUGENE ROSE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1948.*

BEN MORGAN, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General, and WILLIAM J. COLOHAN, Assistant Attorney General, for Respondent.

DAMRON, J.

This complaint filed January 24, 1948, by Eugene Rose, the above named claimant, seeks compensation for injuries sustained by him on September 8, 1947, by reason of an accident which arose out of and in the course of his employment as an attendant employed by the Department of Public Welfare at the Elgin State Hospital. The evidence was heard July 9, 1948 and transcript thereof filed on July 30, 1948.

It was stipulated that claimant was thirty-seven years of age and had no children under sixteen; that he earned $1,748.00 during the year preceding the accident and was temporarily and totally disabled for a period of three weeks during which time he was paid $108.50, for such period based on a monthly salary of $155.00.

No jurisdictional questions require consideration. The only issue presented is the extent of claimant's disability, if any, as a result of the accident.

Claimant testified that on September 8, 1947, he and a fellow attendant, Ward Murrie, were supervising about fifty patients in the ward. While watching one of the

patients in the bathroom another patient crept up behind the two attendants and stabbed them with a pair of barber scissors. Rose was stabbed in the neck. He bled profusely and was treated by Dr. Charles K. Bush, Jr., staff physician, of the Elgin State Hospital. He was hospitalized a week and returned to duty after three weeks. On June 5, 1948, he left the State's employ to accept a more lucrative position with the Veterans' Administration.

Claimant testified that previous to the accident he had no disability but since then he claims to experience pain mostly in his right hand. It is numb and tingles and the back of his forearm above the wrist causes him almost constant discomfort. He lacks strength in his hand and in certain areas he has no sensation and cannot distinguish a sharp instrument such as a pin applied to the arm above the wrist, to the back of the hand, or the inside of the wrist. He cannot judge the temperature of water unless it is extremely hot. There is no loss of function or motion in the arm. The condition has not improved since the accident.

Dr. Charles K. Bush, Jr., the treating physician, at the State hospital testified that on September 8, 1947, he examined claimant and found a puncture wound of the right posterior triangle of the neck about an inch long and 2½ inches deep. At the time he surmised an involvement of the brachial plexus—the network of nerves that run from the spinal cord to the neck that supply the arm. He controlled the bleeding; inserted a drain, closed the wound with interrupted sutures and administered gas bacillus, tetanus antitoxin and penicillin. The report of Dr. Erich Liebert, clinical director, described claimant's sensations of tingling, numbness, etc., and observed that obviously claimant had some

vasomotor disturbance. Dr. Bush was of the opinion the point of the shears had penetrated the sensory nerve roots of the seventh cervical and first thoracic spinal nerves and unless sensation is restored he will have a permanent, partial disability confined to the sensory capacity of the arm but not involving the motor function. The impairment of a sense of pain or of heat or cold might in Dr. Bush's opinion effect the work of certain persons requiring a delicate sense of feeling. In his opinion no further deterioration can be anticipated but inasmuch as it has not regenerated in this period there will be some permanent partial disability.

In addition to the above condition of the arm Commissioner Blumenthal, who heard the testimony and observed the claimant, described for the record that claimant had an irregular shaped scar, starting about 1½ inches laterally on the right side of the neck from the mid line, descending for about 1½ inches. The upper half of the scar was marked by a white discoloration and scar tissue.

Upon consideration of this record we find no compensation can be awarded claimant for the particular disfigurement noted in this record. It cannot be denied the scar as described on the back of claimant's neck is visible and permanent. However, this Court held in *Tyler* v. *State*, 12 C.C.R. 101, that a disfigurement to be compensable under Sec. 8 (c) of the Workmen's Compensation Act in addition to being permanent must also be serious. In that case we quoted with approval Sec. 272 Angerstein (1930 Ed.) to the effect that before a disfigurement can be considered serious it must be such as affects a man's employment.

The Illinois Supreme Court in *Superior Mining Co.*

v. *Industrial Commission*, 309 Ill. 339, takes a similar view of this question. In that case the Court said:

"The object of workmen's compensation laws is to compensate for loss of earning power resulting from industrial accidents. While it is not necessary that there should be a showing of an actual loss of earning power before compensation can be made for a disfigurement, (*Williams Co.* v. *Industrial Com.*, 303 Ill. 352,) the evidence ought to show that the disfigurement for which compensation is sought bears some relation to the capacity to earn and to secure profitable employment. Where a man has suffered serious injuries to his hands, head or face, it is often true that they are of such a character as to place a man at a decided disadvantage when applying for work, and on that theory it is just and proper that provision should be made for compensation for such disfigurements. The Act does not provide compensation for every mark or scar nor for every disfigurement. A disfigurement is that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, mis-shapen or imperfect or deforms in some manner. Before compensation can be awarded under the Workmen's Compensation Act there must be a disfigurement, and that disfigurement must be both permanent and serious."

Claimant is now steadily employed and earning, as an attendant at the Veterans' Administration, more than he was earning at the time of this accident. In view of his vocation, and the condition and location of this scar, it cannot be reasonably inferred or anticipated that the scar will ever affect claimant's capacity to earn or obtain employment or that it has seriously disfigured claimant or caused him to appear unsightly or deformed.

It is very difficult on the basis of the evidence to adjudicate the percentage of permanent partial loss of use of claimant's arm. Although the motor function of claimant's arm is not impaired there can be no question that he has lost some sensation in certain areas of his hand and arm. In addition he experiences the discomfort of unnatural numbness and "tingling"—under all the circumstances in our opinion a finding of 10% of permanent partial loss of use of the arm will accord claimant just and reasonable compensation for the injury

sustained in this instance. Claimant's weekly compensation rate is $19.50 and hence a 10% partial loss entitles him to an award of $438.75. Claimant was paid $108.50 during his period of temporary total disability. This is $50.00 in excess of the $58.50 compensation to which he was entitled for the three weeks in question. Deducting this excess from $438.75 entitles claimant to $388.75.

An award is therefore entered in favor of claimant Eugene Rose in the sum of Three Hundred Eighty-eight Dollars and Seventy-five Cents ($388.75), all of which has accrued.

A. M. Rothbart and Associates were employed to report the testimony at the hearings before Commissioner Blumenthal and charged the sum of Thirty-four Dollars and Eighty-five Cents for such services.

We find that the last mentioned amount is fair, reasonable, and customary for the services rendered.

An award is therefore entered in favor of A. M. Rothbart and Associates in the amount of $34.85 which is payable forthwith.

These awards are subject to the approval of the Governor as provided in Sec. 3 of "An Act concerning the payment of compensation awards to State employees".